ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 JUN 28 PM 2:59
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TERESA A. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 312-051 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Teresa A. Williams ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I.  **BACKGROUND**

Plaintiff protectively applied for DIB and SSI on February 23, 2007, alleging a

---

[1] The Court takes judicial notice of the fact that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), the Clerk is **DIRECTED** to substitute Carolyn W. Colvin, Acting Commissioner of Social Security Administration, as Defendant in this case.

disability onset date of June 23, 2006. Tr. ("R."), pp. 53, 165-67, 173-76. The Social Security Administration denied Plaintiff's applications initially, R. 73-80, and on reconsideration, R. 83-89. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a video hearing on February 25, 2009. R. 60. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as Paul R. Dolan, a Vocational Expert ("VE"). Id. Subsequently, on April 14, 2009, the ALJ issued an unfavorable opinion. R. 60-67. Plaintiff appealed the ALJ's decision to the Appeals Council ("AC"), and the AC thereafter remanded the decision back to the ALJ for further consideration, directing in particular that the ALJ obtain additional evidence concerning Plaintiff's physical and mental severe impairments, fully evaluate Plaintiff's mental impairment in accordance with the appropriate technique, give further consideration to Plaintiff's maximum residual functional capacity ("RFC"), and obtain evidence from a VE to clarify the effect of Plaintiff's reassessed limitations on her ability to perform work. R. 70-72.

Accordingly, the same ALJ held a second, in-person hearing on April 21, 2010. R. 33-51. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by the same counsel as during her previous hearing, as well as Jackson C. McKay, a different VE. Id. On June 16, 2010, the ALJ again issued an unfavorable decision. R. 19-27.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since June 23, 2006 (20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*).

2. The claimant has the following severe impairments: cardiomyopathy,

2

left ventricular global hypokinesis with ejection fraction of 49%, cardiac dysrhythmia and murmers, cardiomegaly/left ventricular hypertrophy; fatigue and malaise; Borderline Intellectual Functioning; mixed moods; and anxiety disorders with agoraphobia/obsessive-compulsive disorder/panic (20 C.F.R. §§ 404.1520(c) & 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, & 416.926).

4. The claimant has the RFC to perform light work[2] except she can do occasional climbing of ladders and scaffolds. She should avoid concentrated exposure to chemicals, dust, fumes, and smoke. She has marked limitations on understanding, remembering, and executing detailed and complex instructions. She has moderate limitations on interacting appropriately with supervisors and coworkers, and adapting to stress and change. She has mild limitations on interacting appropriately with the general public. The claimant has no past relevant work (20 C.F.R. §§ 404.1565 & 416.965).

5. Considering the claimant's age, education, work experience, and RFC, as well as the testimony of the VE, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)). Thus, the claimant has not been under a disability, as defined in the Social Security Act, from June 23, 2006, through June 16, 2010 (the date of the ALJ's decision).

R. 21-27.

When the AC denied Plaintiff's request for review, the Commissioner's decision

---

[2]"Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

3

became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the adverse decision. Plaintiff raises a single issue in this case, arguing that the ALJ erred by improperly applying Listing 12.05(C) to her claim and thereby finding that she did not meet that listing. (See doc. no. 11 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff's applications for benefits was supported by substantial evidence and should be affirmed. (See doc. no. 12 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

4

Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

As noted above, Plaintiff's sole allegation of error is that the ALJ improperly applied Listing 12.05(C) to her claim, which resulted in his allegedly incorrect finding that she did not meet that listing. (Pl.'s Br., pp. 9-14.) According to Plaintiff, given her reported IQ score, the presence of her other severe impairments, and the "significant work-related limitations" imposed by those impairments, she meets Listing 12.05(C). (Id. at 10-11.)

5

Plaintiff contends in particular that the ALJ erred in finding that Plaintiff's "adaptive functioning was not retarded," R. 23, because the information on which he relied in making that finding does not support the same. (Id. at 12-13.) Plaintiff also argues the ALJ improperly found that Plaintiff had "borderline intellectual functioning" despite a previous diagnosis indicating that she had "mental deficiency - mild." (Id. at 13-14.) The Commissioner, on the other hand, contends that substantial evidence in the record supports the ALJ's finding that Plaintiff does not meet Listing 12.05(C). (See Comm'r's Br., pp. 4-8.) The Court notes from the outset that Plaintiff bears the burden of showing that her condition meets or equals the Listing. Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (per curiam). In order to show that her impairment meets a Listing, Plaintiff needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments that are considered severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

Listing 12.05(C) – the only provision at issue in the instant action – pertains to "Mental retardation," which "refers to significantly subaverage general intellectual

functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. The Listing further provides: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. Thus, a claimant generally meets the Listing 12.05(C) criteria when she "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).[3] The Eleventh Circuit, however, has recognized "that a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Id.; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (noting that while a claimant's low IQ scores give rise to a presumption of mental retardation, such a presumption may be rebutted with evidence of daily activities that are inconsistent with a diagnosis of mental retardation); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (*per curiam*) (noting that IQ "test results must be examined to assure consistency with daily activities and behavior").

---

[3]Although paragraph C of the 12.05 Listing sets forth two criteria, an IQ prong and an additional impairment prong, these criteria apply in conjunction with the Listing's definition of mental retardation as "significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C); see also Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (noting the criteria for obtaining benefits under Listing 12.05(C)).

7

Here, the ALJ explicitly acknowledged two psychological evaluations performed by Marvin L. Long, Ed. D., a psychologist that evaluated Plaintiff in a consultative capacity. R. 22-23. In the first of those evaluations, which was administered on October 16, 2006, Dr. Long reported that Plaintiff had a verbal IQ score of 69, a performance IQ score of 63, and a full scale IQ score of 64, which placed her in the "mental deficient-mild" range. R. 22, 313-317. In a subsequent psychological evaluation performed on December 29, 2009, Dr. Long reported that Plaintiff again scored in the "mental deficient-mild" range with a full-scale IQ of 50, but he qualified that finding by noting that Plaintiff "is much more capable than what we're seeing from [a] psychometric standpoint." R. 23, 475-76. Concerning her poor performance on other tests of mental aptitude in that second evaluation, Dr. Long opined, "I don't doubt that [Plaintiff is] a slow learner but I doubt if these scores are anywhere near correct," and he also reported that was "nowhere near [as] disabled" as her performances indicated because she is "a resistant and defiant individual that was not fully participating or applying herself." R. 477.

Notwithstanding the fact that Dr. Long called into question the results of his 2009 evaluation and the IQ score associated with those results, the ALJ gave full credence to Dr. Long's 2006 evaluation, R. 22, such that there is no question or controversy as to whether the first prong of Listing 12.05(C) is satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. In other words, per the first prong, Plaintiff successfully shouldered her burden of presenting a valid IQ score of 60 through 70. However, as noted above, the presumption of mental retardation from low IQ scores can be rebutted with evidence of daily activities that are inconsistent with such a diagnosis, particularly where, here, there is no conclusive evidence

that Plaintiff has ever been diagnosed with mental retardation, let alone that such diagnosis manifested before age 22, as is required by the applicable Listing. See Hodges, 276 F.3d at 1269 (recognizing requirement of Listing 12.05(C) for manifestation of mental retardation before age 22 and allowing that Commissioner may use evidence of activities of daily life to rebut presumption of mental impairment).

In his decision, the ALJ found that Plaintiff's "adaptive functioning is not retarded" and her mental impairments do not meet Listing 12.05(C) despite her valid full-scale IQ score of 64 for the following reasons: (1) Plaintiff's activities of daily living; (2) Plaintiff's sustained employment at the Senior Citizens Center; and (3) Dr. Long's finding that Plaintiff "exhibits higher level applied capability" and "consistently scores in the borderline range on tasks involving defining words, understanding verbal concepts, non-verbal reasoning, social judgment and applied street knowledge." R. 23, 315-16.

### A. ALJ Properly Addressed and Relied on Plaintiff's Activities of Daily Living

The Court will first address Plaintiff's issue with the ALJ's finding that Plaintiff's activities of daily living prove she does not exhibit sufficient functional deficits to meet Listing 12.05(C). (Pl.'s Br., p. 13.) Plaintiff argues that "an initial consideration must be that the ALJ does not enumerate what activities he believes demonstrate that [Plaintiff's] 'adaptive functioning is not retarded.'" (Id.) To show that the ALJ's finding is erroneous, Plaintiff also points to her testimony that she has never had a driver's license and relies on her parents for assistance with household chores and shopping. (Id.)

However, as the Commissioner correctly points out (Comm'r's Br., pp. 5-6), the ALJ very clearly identified and addressed Plaintiff's activities of daily living, and he specifically

noted that those activities "demonstrate significant physical as well as mental functioning capacity." R. 25. In particular, the ALJ noted that Plaintiff operates a home; raises her three children; takes care of her finances; is able to bathe and dress herself; prepares food; cleans the dishes; cooks everyday, although her children help her prepare "simple" meals; sweeps, mops, and vacuums the floors; makes her bed; goes grocery shopping with others; does the laundry; attends parent/teacher conferences at her children's school; helps her children with their homework; prepares her children for school in the morning; attends church every Sunday and on Wednesday nights for Bible study; and ushers at church. R. 23, 25, 43, 252-56, 315, 474-76.

As noted above, the Eleventh Circuit has recognized "that a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837; see also Hodges, 276 F.3d at 1269; Harris, 330 F. App'x at 815 (holding that substantial evidence supported the ALJ's decision that plaintiff did demonstrate the necessary deficits in adaptive functioning to meet Listing 12.05(C) where plaintiff could dress and bathe himself, take care of his personal needs, manage money, read, communicate effectively, and do simple math); Garrett v. Astrue, 244 F. App'x 937, 938 (11th Cir. 2007) (*per curiam*) (holding that, despite plaintiff's low IQ score, the ALJ's finding that the required limitations to adaptive functioning were not present was supported by substantial evidence where plaintiff was able to cook simple meals, perform chores such as dishwashing and yard work, attend church, watch television, play cards, and walk in the mall). Here, the ALJ identified and discussed Plaintiff's many and varied activities of daily living – a number of which are

the same as those discussed in the cases cited above – and found that those activities were inconsistent with the limitations to adaptive functioning that are required by 12.05(C). R. 23-25. Notably, Plaintiff provides no argument as to how her lack of a driver's license or her reliance on her parents for help with chores and shopping indicate such limitations (Pl.'s Br., p. 13), especially in light of the numerous activities discussed above in which Plaintiff successfully engages *without* assistance. Thus, the ALJ properly relied on Plaintiff's activities of daily living in determining that she did not meet the requirements of Listing 12.05(C).

### B.     ALJ Properly Relied on Plaintiff's Previous Employment

Plaintiff also takes issue with the ALJ's reliance on her previous employment with the Senior Citizens Center as indicative of an absence of retarded adaptive functioning. (Pl.'s Br., pp. 11-12.) Plaintiff argues that, although she "certainly did work for several years," because her income associated with that job was so limited, the AC concluded that the job did not constitute "substantial gainful activity" for purposes of considering her past relevant work. (Id. at 12.) Plaintiff also notes the ALJ's agreement with the AC's conclusion, in that he found Plaintiff had no past relevant work, R. 26. (Pl.'s Br., p. 12.) The Commissioner argues, on the other hand, that the ALJ properly relied on Plaintiff's position with the Senior Citizens Center as an indication that she lacked the requisite deficits in adaptive functioning to meet Listing 12.05(C). (Comm'r's Br., p. 7.) The Commissioner has the better argument.

Although Plaintiff attempts to characterize her work activity associated with the Senior Citizens Center as "limited," her "Work History Report," which is contained in the record, indicates that she worked in "food service" there – preparing food trays, delivering

11

meals, and serving food – and that she in fact held that position for approximately seven years, from some time in 1999 until June 23, 2006. R. 244. Moreover, she only lost the position when she was laid off due to a lack of available work. R. 314-16. In Humphries v. Barnhart, 183 F. App'x 887, 889 (11th Cir. 2006) (*per curiam*), the court found that plaintiff, despite her IQ of 65, did not have deficits in her adaptive functioning due in part to the fact that she worked for twenty-one years in a school cafeteria. Additionally, in Harris v. Comm'r of Soc. Sec., 330 F. App'x 813, 815 (11th Cir. 2009) (*per curiam*), the court affirmed the ALJ's finding that plaintiff failed to meet the requirements of Listing 12.05(C) where, among other things, he was able to hold several jobs. Accordingly, the ALJ did not err in relying in part on the fact of Plaintiff's former employment in determining that she failed to meet the requirements of Listing 12.05(C).[4]

### C. No Error or Harmless Error Based on Dr. Long's 2006 Evaluation

Finally, Plaintiff argues that the ALJ improperly relied on Dr. Long's comments that Plaintiff "exhibits higher level applied capability" and "consistently scores in the borderline range on tasks involving defining words, understanding verbal concepts, non-verbal reasoning, social judgment and applied street knowledge." (Pl.'s Br., p. 12.) Plaintiff takes particular issue with the ALJ's reference to Plaintiff's scores as having fallen within the borderline range and argues that "Dr. Long's report does not contain any testing or any scores that reflect that conclusion." (Id.) However, Plaintiff concedes that Dr. Long's report *does*

---

[4] Plaintiff does not cite to, nor is the Court aware of, any authority supporting her argument that, because the AC determined her employment with the Senior Citizens Center did not constitute "substantial gainful activity" due to the low income associated with that position, the ALJ erred by relying on that position in determining whether Plaintiff met Listing 12.05(C). (Pl.'s Br., p. 12.)

indicate Plaintiff obtained a reading score of 73, which is within the borderline range. (Id.) Thus, the true crux of Plaintiff's argument appears to concern the ALJ's reliance on Dr. Long's allegedly incorrect use of the word "consistently" to describe Plaintiff's scores in the borderline range, in that Dr. Long's report only contains one such score in that range.

The Court finds Plaintiff's argument unavailing. First, even assuming *arguendo* that Dr. Long was mistaken in describing Plaintiff's scores as "consistently" within the borderline range, Dr. Long also clearly stated that, despite her relatively low scores, Plaintiff generally exhibited higher level applied capability than those scores indicated. R. 316. Indeed, Dr. Long noted that Plaintiff "is a resistant and defiant individual that was not fully participating or applying herself." R. 477. Thus, the Court does not find such a deliberate parsing of the exact language used by Dr. Long concerning Plaintiff's scores to be a useful endeavor, especially given the various other persuasive reasons that the ALJ lists in support of his determination that Plaintiff failed to demonstrate the requisite deficits to meet Listing 12.05(C). R. 23-26. Moreover, Plaintiff fails to provide any argument whatsoever as to what effect the ALJ's reliance on Dr. Long's use of the word "consistently" might have had on his ultimate decision. There is simply no indication that the ALJ would have reached a different decision if only Dr. Long had not used the word "consistently," and common sense dictates that the distinction drawn by Plaintiff is one that would have made no difference whatsoever.[5]

---

[5] Indeed, Plaintiff's argument as to whether she is properly classified as having "mental deficiency-mild" or "borderline intellectual functioning" is something of a moot point. (Pl's. Br., pp. 12-13.) Plaintiff has provided no citation to, nor is the Court aware of, any authority for the proposition that the ALJ would be unable to look to other evidence in the record to find that Plaintiff does not meet Listing 12.05(C) despite her low IQ score, as he has done here, if Plaintiff were classified as having "mental deficiency-mild" rather than "borderline intellectual functioning." In other words, the specific nature of Plaintiff's mental

13

See Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) (*per curiam*) (noting that "when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand").

In sum, the Court concludes that, in light of the other evidence of record, including Plaintiff's work history and activities of daily living, as well as the findings of Dr. Long, the ALJ properly determined that Plaintiff did not meet the criteria for Listing 12.05(C), despite the IQ score reported in Dr. Long's October 2006 consultive evaluation report. Thus, that finding is supported by substantial evidence and should be affirmed.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 28th day of June, 2013, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE

---

classification has no bearing on the ALJ's ability to look to other evidence in the record for purposes of his 12.05(C) analysis.

14